## SUPREME COURT.

DeWitt C. Grinnell·agt. Patrick S. Stewart, Joseph C.
Budd and Alfred Avery.

The law will never authorize and justify a complaint and *arrest* for felony, on the
ground of *false representations*, by the accused, when positive evidence of the
*truth* of his representations is furnished by him to the complainants, or is so
described that it can be easily ascertained.

Where on the trial there is sufficient proof *of want of probable cause*, for the prose-
cution, *malice* may be inferred, and that question is a proper one to be submitted
to the jury.

*New York General Term, February,* 1861.

*Cause argued in September,* 1860, *before.* Sutherland,
Allen and Bonney, *Justices.*

THIS action was for a malicious prosecution and false imprisonment. The cause was tried at the circuit, before Mr. Justice DAVIS, who dismissed the complaint on motion of defendant's counsel. An appeal from the judgment upon that decision was made to the general term, by the plaintiff.

ROBERT D. HOLMES and JAMES T. BRADY, *for the plaintiff.*

LAWRENCE J. GOODALE, *for defendants.*

By the court, BONNEY, Justice. This is an action for malicious prosecution and false imprisonment. At the trial, after the testimony was closed, the presiding justice dismissed the complaint on motion of defendants' counsel, on the grounds,

1. That malice was not shown on the part of the defendants, or either of them, in instituting the proceedings complained of.

2. That plaintiff had not shown want of probable cause for instituting said proceedings, and,

3. That the detention of the plaintiff while held under the warrant issued in said proceedings did not amount to false imprisonment.

The proof at the trial was, that on the 16th of December, 1856, a warrant for the arrest of the plaintiff was issued by the county judge of Jefferson county, on the complaint and affidavits of the defendants Stewart and Budd, stating (in substance) that in June, 1856, the plaintiff obtained from them, or their firm in New York, certain property by falsely and fraudulently representing that he was worth $20,000 over and above all his debts and liabilities, and that his property consisted of the one-half of the Fashion race-course on Long Island, of which he was owner. That he referred to the records in Queens county clerk's office for evidence of such ownership. That the representations were false, and plaintiff owned no such property. That on

the 5th of December, 1856, Budd made personal examina-
tion of the records in said clerk's office, and found that said
race-course was sold, under foreclosure proceedings, on the
23d of January, 1856, to Reuben Parsons, and it did not
appear that plaintiff, after that time, was owner of such
race-course, or any part of it.

Under this warrant the plaintiff was arrested on the 24th
of December, 1856, in the city of New York, and there
detained in custody, until in January following, when he
was taken by an officer to Jefferson county, and the hearing
of the complaint was commenced before the county judge
on the 6th, and continued until the 17th of January, 1857,
when the plaintiff was discharged and the complaint dis-
missed.

When the arrest was made, Avery and Stewart were
present, and told the officer who held the warrant that they
could not arrange matters, and he must take the plaintiff
prisoner.   They said that the plaintiff had made false pre-
tences to them, that he was owner of property on Long
Island, and they had searched the records and could not
find it.   The plaintiff then insisted that he did own the
property, and had not deceived them.   Stewart and Avery
said that they would receive $3,000 or thereabouts, and
release the plaintiff, and that they did not wish the officer
to take him directly to Jefferson county, because they
wanted to give him an opportunity to settle; they further
said, that if the plaintiff had not money his friends had,
and he could get it.

On the trial it was fully proved that all the representa-
tions made by the plaintiff in relation to his ownership of
one-half of the Fashion race-course, were true; that his
ownership did appear by the records in Queens county
clerk's office; that he acquired title by purchase at a fore-
closure sale, in January, 1855, and paid $26,800 in cash for
the property; that his deed was recorded in said clerk's
office, on the 25th February, 1855, and duly indexed, and

that the judgment record in that foreclosure suit was filed in the same clerk's office.

It was also proved that, on the examination before said county judge, the defendant Budd testified that in December, 1856, he went to Queens county clerk's office, and, with the assistance of the clerk, found that plaintiff had no title to any property in that county since the 23d January, 1856, when said race-course was sold on a foreclosure of a mortgage, and purchased by Reuben Parsons; that he made a thorough search; that the deed to Parsons, and a mortgage made by him immediately after his purchase, to a man named Hearne, corresponded to the description of the premises which were described by courses and distances; that the clerk showed him the papers, among which he saw the report of the referee and the record of the deed to Parsons, and an entry in the book of notices of *lis pendens.*

The complaint, notice of *lis pendens* and judgment in such foreclosure suit, and the referee's deed to Parsons under said judgment, and his report of the sale, were then put in evidence, in and by each of which it distinctly appeared that the premises so conveyed to the plaintiff by the deed recorded in February, 1855, and of which he represented himself to be the owner, were not included in the sale made to Parsons, but were expressly excepted from such foreclosure proceedings and sale by description, and in nearly (if not exactly) the words of the description contained in said deed to the plaintiff.

By such proof, the plaintiff, in my opinion, did show a want of probable cause for instituting said proceedings by the defendants against him for alleged fraudulent representations. He fully and clearly proved that the representations made by him were true to every intent, and that the records to which he referred the defendants, distinctly proved them to be true.

But it is said that one of the defendants, with the assistance of said county clerk, examined said records and failed

to find therein the evidence of the truth of the plaintiff's representations, and that in instituting the criminal proceedings against the plaintiff, he and the other defendants acted under the conscientious (though erroneous) belief that the representations made by the plaintiff were false, and therefore an action for malicious prosecution cannot be maintained against them; and cases are cited for the principle that proof, however positive, of the innocence of a party accused and arrested, is not sufficient evidence of want of probable cause for making complaint against him, to sustain an action for malicious prosecution against the prosecutor when he appears to have acted in good faith and in the belief that his charge was true. (*Murray* agt. *Long*, 1 *Wend.*, 140; *Feskay* agt. *Ferguson*, 2 *Denio*, 617; *Vanderbilt* agt. *Mathis*, 5 *Duer.*, 304; *and cases referred to.*)

The principle for which the defendants contend is not questioned; but in my opinion it does not reach this case. The principal if not the only ground for the complaint made against this plaintiff, was that the records to which he referred, as proof of the truth of his representations, were found on examination not to contain such proof; but proved the reverse of what the plaintiff had asserted. The fact was that the records referred to, and which one of the defendants testified that he had examined, did clearly and distinctly prove exactly what the plaintiff had stated; and the defendant who testified in relation thereto, either did not see those records or did not examine them with reasonable, or indeed, with any care, or he had not the capacity to understand a plain statement of facts; and I do not understand that the law will authorize and justify a complaint and arrest for felony on the ground of false representations by the accused, when positive evidence of the truth of his representations was furnished by him to the complainants at the time when the representations were made. If, as I think, there was in this case, sufficient proof of want of probable cause, malice might be therefore

Grinnell agt. Stewart.

inferred, and whether or not the prosecution complained of was malicious, should have been submitted to the jury. By malice, I understand in cases like the present to be intended, not necessarily spite or hatred against the accused, but *wrong-mindedness*, (*malus animus*,) the being actuated by improper and indirect motives; and in my opinion, upon the evidence in this case, it might very properly have been submitted to the jury, to find whether these defendants, in causing the prosecution and arrest of the plaintiff, were actuated by any regard for public justice or a desire that a supposed offender against law and morals should be punished; or whether they intended to use this form of criminal proceeding for their private benefit, to compel from the plaintiff or his friends the payment of the sum of three thousand dollars, which the defendants claimed was due to them from the plaintiff, and upon receipt of which it was proved they, or some of them, said they would release him.

The opinion above expressed, renders it unnecessary for me now to consider the question of false imprisonment, the decision of which, as I view the case, will depend very much, if not entirely, on the determination of the other questions involved in the action.

The order dismissing the complaint should be set aside and a new trial granted. Costs to abide the event of the action.